JOHN D. KIRBY
CA Bar No. 149496
The Executive Complex
1010 Second Avenue,
Suite 2400, San Diego, CA 92101
Tel (619)557-0100 Fax (619)557-0123
Attorney for LUKE NOEL WILSON

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
(THE HONORABLE JUDGE GONZALO P. CURIEL)

| | |
|---|---|
| UNITED STATES GOVERNMENT,<br><br>Plaintiff,<br><br>vs.<br><br>LUKE NOEL WILSON<br><br>Defendant. | Case No. 15-CR-2838 GPC<br><br>**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AS A RESULT OF AN ILLEGAL SEARCH** |

# I.
# STATEMENT OF FACTS

On November 10, 2015, LUKE NOEL WILSON ("Mr. Wilson") was indicted on the following charges: Advertising of Child Pornography, in violation of 18 U.S.C. §2251(d)(1)(A); Distribution of Images of Minors Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. §2252(a)(2); Possession of Matters Containing Images of Minors Engaged in Sexually

Explicit Conduct, in violation of 18 U.S.C. § 2252 (a)(4)(B). The indictment also includes a criminal forfeiture allegation.

The charges against Mr. Wilson stemmed from a private email he attempted to send another individual. It never reached its intended recipient. When the email was sent, Mr. Wilson's internet service provider (ISP), Google, intercepted and flagged it as suspected child pornography. Based upon the memo Google sent to the government in this case, attached as Exhibit A, Google used a filter, known as a "hash value," to flag Mr. Wilson's email as containing suspected child pornography by comparing it to a database of known images of child pornography.[1] Google delivered the suspect email, without viewing its contents, to the National Center for Missing and Exploited Children ("NCMEC"), a federally mandated and largely federally funded non-profit entity. Without opening the email,[2] personnel at NCMEC passed it to the San Diego Internet Crimes Against Children Task Force, a law enforcement agency.

---

[1] A hash value is a string of characters generated from a much larger string of data using an algorithm – and calculated in a way that makes if highly unlikely another set of data will produce the same value. See Richard P. Salgado, Fourth Amendment Search and the Power of the Hash, 119 Harv. L. Rev. 38, 38-40 (2005), cited by United States v. Ackerman, 831 F.3d 1292, 1294 (10th Cir. 2016). A "hash" is often referred to as a type of filter that compares characteristics of an email or attachment against known (child pornography) images.

[2] See Exhibit B. This represents a change in NCMEC's protocol, perhaps in response to the Ackerman decision, which held that NCMEC qualified as a government entity to which the Fourth Amendment applied .

*U.S. v. Wilson 15cr2838 GPC*

**2**

Special Agent William Thompson of the Task Force then, for the first time, opened Mr. Wilson's email and viewed the attached images. Based upon the discovery turned over by the government, S/A Thompson opened Mr. Wilson's email and attachments without first obtaining a warrant. Based solely upon the pornographic images in the attachments to Mr. Wilson's email, agents obtained search warrants for Mr. Wilson's email, and his home and computer equipment.[3] An examination of Mr. Wilson's computer and equipment led to the discovery of additional child pornography images, as well as emails containing what the government characterizes as "advertisements" for child pornography.

S/A Thompson, based upon the information gleaned from the search of Mr. Wilson's residence and email, subsequently located and arrested Jenalyn Arriola. Her residence and email were also searched. This entire investigation was launched based upon S/A Thompson's illegal search of Mr. Wilson's email and attachments. See Exhibit C.

//

//

---

[3] The search warrant affidavits for the search of Mr. Wilson's email, home and computer equipment are attached as Exhibit C.

# II.
# ARGUMENT

## All Fruits of the Initial Warrantless Search Should Be Suppressed

Simply put, the government violated Mr. Wilson's constitutional rights under the Fourth Amendment when, without seeking a warrant, the agent opened Mr. Wilson's private email and the attached files and viewed their contents. No exception to the warrant requirement or remedy of suppression exists in this case. For that reason, the fruits from the tainted initial search in this case must be suppressed.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause . . . ." U.S. Const. Amend IV. The amendment's protection embodies "a particular concern for government trespass upon" these enumerated areas. United States v. Jones, 565 U.S. 400, 406 (2012). Where "the Government obtains information by physically intruding on a constitutionally protected area," a Fourth Amendment "search has undoubtedly occurred." Id. at 406, n.3.

In addition, absent a trespass, the Fourth Amendment protects against governmental actions that violate a person's privacy rights. Jones, 565 U.S. at

406, 409 (citing Katz v. United States, 389 U.S. 347, 351 (1967).)  This non-trespassory test is two-fold: (1) the person must have a subjective expectation of privacy in the item searched; and (2) that subjective expectation of privacy must be objectively reasonable.  Smith v. Maryland, 442 U.S. 735, 740 (1979).

### A. A Search Occurred for Purposes of the Fourth Amendment

Mr. Wilson had a Fourth Amendment property interest in his electronic mail, and that property interest existed until his mail reached its intended recipient – which it never did because it was intercepted by Google.[4]  Because the government searched the mail prior to its delivery, the search implicated the Fourth Amendment.  Moreover, the search implicated the Fourth Amendment because Mr. Wilson had a subjective expectation of privacy in his email, and that subjective expectation of privacy was objectively reasonable.

For over 100 years, the Supreme Court has recognized that a piece of mail is subject to the Fourth Amendment. See Ex Parte Jackson, 96 U.S. 727, 733 (1877).  More recently, the Supreme Court, in Walter v. United States, 447 U.S. 649 (1980), reaffirmed that the content of an item of mail is protected under the Fourth Amendment.  The Ninth Circuit, in United States v. Forrester,

---

[4] Even if Google's limited filtering of Mr. Wilson's email through its "hash" system could be characterized as a limited private search, S/A Thompson's opening and actually viewing the attachments to the email was a significant expansion of that "search." See e.g. Walter v. United States, 447 U.S. 649 (1980).

*U.S. v. Wilson 15cr2838 GPC*

512 F.3d 500 (9th Cir. 2008), analogously stated that the content of an email is subject to the Fourth Amendment as well ("E-mail, like physical mail, has . . . a package of content that the sender presumes will be read only by the intended recipient. The privacy interests in these two forms of communication are identical."). See also, United States v. Mohamud, 843 F.3d, 420, 442 (9th Cir. 2016) ("until electronic communications reach the recipient, they retain the same level of privacy interest as if they were still in the home"). United States v. Cotterman, 709 F.3d 2013 (9th Cir. 2012) (email is considered paper or an effect for Fourth Amendment analysis).

When Mr. Wilson sent his email, he retained a Fourth Amendment property interest in the contents of the email until its delivery to the recipient. The email was "fully guarded from examination and inspection." Ex parte Jackson, at 733. Moreover, Mr. Wilson had a Fourth Amendment property interest in his own email, whether it contained contraband, i.e. child pornography, or not. See United States v. Jeffers, 342 U.S. 48, 53-54 (1981) (rejecting the government's argument that a search that uncovers contraband is not a Fourth Amendment search); see also United States v. Jacobsen, 466 U.S. 109, 114 (1984) (rejecting the argument that a warrantless search of a mailed package could "be characterized as reasonable simply because, after the official invasion of privacy occurred, contraband is discovered."). Thus, under a Fourth

Amendment trespass theory, the government searched Mr. Wilson's email for Fourth Amendment purposes when it opened the email and attachments.

This settles the issue of whether the government conducted a Fourth Amendment search when it opened Mr. Wilson's intercepted email and attachments. However, the government's search of Mr. Wilson's emails was a Fourth Amendment search under an "expectation of privacy" theory as well.

Under a privacy-rights theory, in individual must have a subjective expectation of privacy in an item searched to challenge the constitutionality of that search. See Smith v. Maryland, 442 U.S. 735, 740 (1979). Mr. Wilson has the burden of showing that he had a subjective expectation of privacy.

Mr. Wilson has met that burden. As set forth in his Declaration, attached as Exhibit D, Mr. Wilson states he would not have used gmail had he known that his email would not remain private. See Decl. at para 5. Mr. Wilson also states that he thought any information he sent to others via his email was private information. Decl. at para 3-4. Mr. Wilson's actions reinforce his words. Mr. Wilson attempted to send an email from his private account to another person's private email account. He did not post the email to a public site, send the email to hundreds of people, or do anything to abandon his stated expectation of privacy. In addition, it stretches the imagination that Mr. Wilson would have

sent child pornography from his private email account if he did not think that the email he sent would remain private.

Mr. Wilson's expectation of privacy was also objectively reasonable. Smith v. Maryland, 442 U.S. 735, 740 (1979); United States v. Forrester, 512 F.3d 500 (9th Cir. 2008) ("E-mail, like physical mail, has . . . a package of content that the sender presumes will be read only by the intended recipient. The privacy interests in these two forms of communication are identical."); see also, United States v. Warshak, 631 F.3d 2010 (6th Cir. 2010) (quoted in United States v. Mohamud, supra.)  Thus, under either the property theory or the reasonable expectation theory, the government conducted a warrantless search in violation of the Fourth Amendment when it opened Mr. Wilson's email, and the evidence obtained therefrom is subject to suppression.

### B. No Exceptions to the Exclusionary Rule Apply

#### 1. Good Faith Exception

The government has stated more than once that it may rely upon the so-called "good faith" exception.  The "good faith" exception originally excused unconstitutional searches conducted pursuant to search warrants.  United States v. Leon, 468 U.S. 897, 922 (1984).  The Supreme Court created an exception to cover instances where an officer reasonably relied on a judge's misguided

probable-cause determination. But this case involves a warrantless search, and is thus outside the original basis for the good-faith exception.

Since Leon, the Court has extended the good-faith exception to warrantless searches in three different contexts.  The first, and really the only exception that has any relevance, is if an officer relies on another person's negligent mistake. Herring v. United States, 555 U.S. 135, 147-148 (2009).  In Herring, however, an officer relied upon the county clerk's assertion that the defendant had an outstanding warrant, which was in turn based upon another law enforcement employee's negligence. In this instance, it was S/A Thompson own negligence that presumably led him to believe Mr. Wilson's email and attachments had already been opened.  The Supreme Court has never applied the good faith exception to excuse an officer who was negligent himself, and whose negligence directly led to the violation of the defendant's constitutional rights. United States v. Camou, 773 F.3d 935, 944 (9th Cir. 2014).[5]  The good-faith exception will not save S/A Thompson from his own negligence.  Herring has no application to this case, and neither does the good-faith exception.[6]

---

[5] See also United States v. Camou, at footnote 3 for a detailed analysis of why an officer's own negligence cannot be the basis for a good-faith claim: "[B]ecause "objectively reasonable" and "negligent" are mutually exclusive, the only way to reconcile the "objectively reasonable reliance" rule established in Leon is to conclude that the officer who executed the unconstitutional search or seizure cannot be the negligent actor."

[6] The second and third applications of the good-faith exception do not apply on their face. Warrantless searches conducted in reliance on binding appellate precedent are not subject to

## 2. Inevitable Discovery/Independent Source

The government may also attempt to invoke the inevitable discovery doctrine. The controlling Ninth Circuit precedent in this area is United States v. Mejia, 69 F.3d 309 (9th Cir. 1995). The inevitable discovery exception allows the introduction of illegally obtained evidence where the government proves by a preponderance of the evidence that the tainted evidence would have inevitably been discovered through lawful means. Id. at 319.

For example, in Nix v. Williams, 467 U.S. 431 (1984), the police obtained a statement from the defendant, in violation of his right to counsel, as to the location of the murder victim's body. At the time the statement was obtained, other law enforcement officers were conducting a search for the body which would have been discovered within a few hours even if the defendant had not told the police where to find it. In affirming the trial court admission of the location and condition of the body at trial, the Supreme Court noted that the

---

the exclusionary rule. Davis v. United States, 131 S.Ct. 2419, 2423-2424 (2011). There is no binding precedent from the Ninth or any other Circuit upholding the warrantless search conducted in this case. Similarly, warrantless searches conducted in reliance on a statute that (unconstitutionally) authorizes warrantless administrative searches have been held, in certain circumstances, to be not subject to the exclusionary rule. Illinois v. Krull, 480 U.S. 340, 359 (1987). Similarly, since NCMEC was not involved in the search here, there is no statute authorizing the government's search of Mr. Wilson's email and attachments.

closely related "independent source doctrine" allows admission of evidence that had been discovered wholly independent of any constitutional violation.

However, the inevitable discovery doctrine has never been applied in the Ninth Circuit where the police had probable cause to obtain a warrant but simply did not attempt to obtain one. United States v. Mejia, 69 F.3d 309, 320 (9th Cir. 1995); United States v. Young, 573 F.3d 711, 722.  Here, S/A Thompson had a report from NCMEC stating that Google had flagged Mr. Wilson's email and attachments as containing suspected child pornography.  S/A Thompson could have used that information to obtain a warrant to open the suspected images.  For whatever reason, he chose to forgo that step in the investigation and simply opened the images without a warrant.  As the Ninth Circuit stated in United States v. Echegoyen, 799 F.2d 1271, 1280 n. 7, "[to] excuse the failure to obtain a warrant merely because the officers had probable cause and could have obtained a warrant would completely obviate the warrant requirement."[7]

As for the independent source doctrine, the government may argue that it obtained an incriminating email from Mr. Wilson "independently" through Ms. Arriola's, email account.  However, as noted above in the discussion of Nix,

---

[7] While Google's flagging of the information as child pornography may have been enough to gain a warrant to open the attachments, it would not have been sufficient to gain a search warrant of Mr. Wilson entire email account, let along his residence.  See United States v. Nora, 765 F.3d 1049, 1060 (9th Cir. 2014) (a warrant must be no broader that the probable cause upon which it is based).

supra, for the independent source doctrine to apply, the government must show that the evidence was discovered by means wholly independent of the constitutional violation. Here, the government would not have discovered Ms. Arriola's email account, or Ms. Arriola herself, absent the violation of Mr. Wilson's Fourth Amendment rights. As such, the independent source doctrine does not apply. See United States v. Chamberlin, 664 F.3d 1262, 1269 (9th Cir. 1980) (test is whether the illegal activity tends to significantly direct the investigation to the evidence in question); see also United States v. Davis, 332 F.3d 1163, 1171 (9th Cir. 2003).

C. **Excising Subsequent Warrant**

The independent source doctrine discussion dovetails into the issue of whether the subsequent search warrant for Mr. Wilson's email account and home and computer equipment, excised of the tainted information, contain sufficient probable cause. An examination of the warrant, attached as Exhibit B, shows that it does not. The warrant, after excising S/A Thompson's descriptions of the photos contained in the email attachments, simply states that NCMEC provided a Cybertip report to the San Diego ICAC Task Force which documented that Google became aware of four image files depicting suspected child pornography, and information that linked the user of the sending email address to Luke Wilson at his home address. Without any description of the

images, other than they had been flagged by Google as *suspected* child pornography, there is insufficient information to support a finding of probable cause by an independent magistrate.  See United States v. Gourde, 440 F.3d 1065 (9th Cir. 2006).  See also, United States v. Ahrnt, 2013 U.S.Dist. LEXIS 7223 (Dist. OR 2013).

### D. All Evidence Derived Directly or Indirectly From The Illegal Search Must Be Suppressed

The exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or "fruit of the poisonous tree." Segura v. United States, 468 U.S. 796, 804 (1983); Nardone v. United States, 308 U.S. 338, 341 (1939); Weeks v. United States, 23 U.S. 383 (1914); United States v. Nora, 765 F.3d 1049 (2014).  "It 'extends as well to the indirect as the direct products' of unconstitutional conduct." Segura v. United States, supra (quoting Wong Sun v. United States, 371 U.S 471, 484 (1963)).  Whether the subsequently obtained evidence is "tainted" by a prior illegality depends on whether the evidence was "come at by exploitation of [the initial] illegality . . . ." Wong Sun v. United States, 371 U.S. 471, 488 (1963).  See also, Segura v. United States, 468 U.S. 796, 804-05 (1984).

**13**

Here, all the evidence in this case stems from S/A Thompson's initial, warrantless search of Mr. Wilson email and attachments. The attachments themselves obviously must be suppressed. So too, all evidence seized at Mr. Wilson's email account and residence, since the probable cause statement in that warrant centers around the attachments themselves.

In addition, any evidence seized from Ms. Arriola's email account, and Ms. Arriola's statements, also stems from the initial, illegal, search of Mr. Wilson's email and attachments. Without S/A Thompson's initial constitutional violation, he never would have been led to Ms. Arriola, or have any reason to search her email and/or question her. See United States v. Chamberlin, 664 F.3d 1262, 1269 (9th Cir. 1980). The evidence seized from her account, and the statements she made after being confronted with Mr. Wilson's emails to her, also constitute fruits of the poisonous tree and must be suppressed. See United States v. Nora, 765 F.3d 1049, 1057 (defendant's statement suppressed when evidence gleaned from illegal search in questioning him).

//

//

## III.
## CONCLUSION

For the reasons set forth above, the evidence gleaned from the illegal search of Mr. Wilson's email and attachments, and all of the tainted "fruits" of that initial search, must be suppressed.

                                                Respectfully Submitted,

Dated: April 28, 2017                        /S/ JOHN D. KIRBY
                                                      JOHN D. KIRBY