UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, Plaintiff, v. LUKE NOEL WILSON, Defendant. | Case No.: 3:15-cr-02838-GPC **ORDER GRANTING AMENDED MOTION FOR BAIL PENDING SENTENCING** **[ECF No. 95]** |
|---|---|

Before the Court is Defendant Luke Noel Wilson's ("Wilson") amended motion for bail pending sentencing. (ECF No. 95.) The government filed a response in opposition on December 7, 2017 (ECF No. 97), and Wilson filed a reply on December 11, 2017 (ECF No. 99). The Court held a hearing on the motion on December 18, 2017. (ECF No. 101.) Based on the parties written submissions and arguments offered during the hearing, and for the reasons set forth below, the Court GRANTS the motion for bail pending sentencing.

**I. Background**

On November 10, 2015, a grand jury returned an indictment against Wilson charging him with (1) advertising child pornography in violation of 18 U.S.C. § 2251(d)(1)(A); (2) distribution of images of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2); and (3) possession of matters containing

1

images of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). (ECF No. 17.) Wilson pled not guilty. (ECF No. 18.) On December 15, 2015, Magistrate Judge Jill L. Burkhardt denied the government's motion for detention (ECF No. 23), and ordered that Wilson be released subject to several conditions (*see* ECF No. 24).

On June 24, 2016, Wilson appeared before Judge Burkhardt and pled guilty, pursuant to a plea agreement with the government, to the first count of the indictment. (ECF No. 32.) On February 3, 2017, however, Wilson filed motion to withdraw his guilty plea (ECF No. 44), which the Court granted on April 14, 2017 (ECF No. 55). Two weeks later, Wilson filed a motion to suppress evidence relating to a private email he had sent, which was intercepted by his email operator and sent to the National Center for Missing and Exploited Children ("NCMEC"). (ECF No. 57.) After holding an evidentiary hearing on May 18, 2017 (ECF No. 67), the Court issued a written decision concluding that no police search of Wilson's private email for purposes of the Fourth Amendment had occurred prior to the issuance of a warrant, and as a result, no Fourth Amendment violation occurred in this case. (ECF No. 71.) The Court explicitly rejected, however, the government's alternative arguments that (1) probable cause to support the search warrant existed independent of the evidence from the intercepted email, or (2) the good faith exception applied. (*Id.* at 20–23.)

On October 23, 2017, the Court held a bench trial and found Wilson guilty as to the second and third counts in the indictment.[1] (ECF No. 88.) The same day, the Court ordered Wilson remanded into custody. (ECF No. 91.) Wilson now requests that he be released pending sentencing. (ECF No. 95.)

## II. Legal Framework

18 U.S.C. § 3143(a)(2) requires a judge to detain "a person who has been found

---

[1] During the bench trial, the Court granted a motion by the government to dismiss the first count of the indictment. (ECF No. 88.)

guilty of an offense in a case described in [18 U.S.C. § 3142(f)(1)(A), (B), or (C)] and is awaiting imposition or execution of sentence" unless (1) the judge finds there "is a substantial likelihood that a motion for acquittal or new trial will be granted" or the government recommends a no-prison sentence, and (2) the judge finds there is clear and convincing evidence "that the person is not likely to flee or pose a danger to any other person or the community." Wilson's two convictions are offenses described in 18 U.S.C. § 3142(f)(1)(A). *See id.* § 3142(f)(1)(A) (referring to a "crime of violence"); *id.* § 3156(a)(4)(C) (defining "crime of violence" as "any felony under chapter . . . 110," which includes 18 U.S.C. § 2252). At the conclusion of the bench trial in this case, the Court ordered Wilson detained because there was no substantial likelihood of an acquittal or new trial, and the government has not recommend a non-custodial sentence.

Under 18 U.S.C. § 3145(c), however, a person detained under § 3143(a)(2) "who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions . . . if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."[2] In the instant motion, Wilson argues that there are "exceptional reasons" why he should not be detained pending sentencing.

The Ninth Circuit clarified the meaning of "exceptional reasons" for the first time in a published opinion in *United States v. Garcia*, 340 F.3d 1013 (9th Cir. 2003), which addressed a defendant's motion for release pending an appeal.[3] While the court found neither the plain reading of § 3145 nor the legislative history to be of much help in this analysis, it identified one aspect of the legislative history that it found relevant: a letter from the Justice Department in response to the sponsor of the Mandatory Detention Act.

---

[2] "Although the 'exceptional reasons' provision appears in a subsection that otherwise concerns actions taken by appellate courts, . . . the district court has authority to determine whether there are exceptional reasons" for release." *United States v. Garcia*, 340 F.3d 1013, 1014 n.1 (9th Cir. 2003).

[3] The legal principles governing whether exceptional reasons to release a defendant pending appeal "are equally applicable" to a motion for release pending sentencing. *Id.* at 1015 n.2.

*Id.* at 1017–18 & n.4. In that letter, the Justice Department expressed concern over the bill because the version at the time mandated detention, without any exception, for defendants convicted of crimes of violence, controlled substance offenses punishable by at least ten years, or offenses punishable by death or life imprisonment while awaiting sentencing or appeal. *Id.* The Justice Department worried that "there may be rare instances in which release, under appropriate conditions, would be proper," such as "a situation in which the convicted defendant does not pose either a danger to the community if released or a risk of flight, and in which the appeal raises a substantial question of law." *Id.* at 1017 n.4. It offered two such examples: (1) "an elderly man convicted under 18 U.S.C. § 1111 of the mercy killing of his spouse, who has lived in the community all his life without prior incident, and who is challenging the applicability of the federal murder statute to mercy killings, a question of first impression in the circuit," and (2) "a convicted drug dealer who, because of wounds incurred during his capture, was temporarily incapacitated and thus not likely to commit further crimes or to flee, and whose appeal raised a novel and difficult search or seizure question on which the conviction will stand or fall." *Id.*

Beginning its analysis, the court first cautioned that whatever guidance it provided in that opinion, it was not placing any limits "on the range of matters the district court may consider." The court explained that

> the [district] court should examine the totality of the circumstances, and on the basis of that examination, determine whether, due to any truly unusual factors or combination of factors (bearing in mind the congressional policy that offenders who have committed crimes of violence should not, except in exceptional cases, be released pending appeal) it would be unreasonable to incarcerate the defendant prior to the appellate court's resolution of his appeal.

*Id.* It then named a few factors that might qualify "alone or in combination with others" as exceptional reasons under § 3145(c), such as if (1) the criminal conduct was aberrational; (2) the nature of the "violent" act was such that the defendant's intent was

4

3:15-cr-02838-GPC

not to "involve any threat or injury to persons," or (3) the circumstances surrounding the act were highly unusual (*e.g.*, the DOJ's example of the elderly man's mercy killing). *Id.* at 1019. Also relevant is the length of the prison sentence, and whether certain circumstances "would render the hardships of prison unusually harsh for a particular defendant," such as "in a case in which incarceration would impose exceptional risks on a defendant involving his physical or mental well-being." *Id.* at 1019–20. A court should also consider "[t]he nature of the defendant's arguments on appeal," including whether there is an "unusually strong chance that the defendant will succeed in obtaining a reversal of his conviction," particularly "[i]f one or more issues raised on appeal has not previously been decided by the court to which the petitioner will appeal." *Id.* The court also noted that a defendant's cooperation with the government is relevant because "it may also render the defendant exceptionally vulnerable to injury in prison." *Id.* at 1021. The court qualified these considerations, however, by noting that "[h]ardships that commonly result from imprisonment do not meet the standard." *Id.* at 1022.

### III. Discussion

Tracking the language of § 3145(c), the Court must decide whether Wilson "meets the conditions of release set forth in section 3143(a)(1)," and, if so, whether "it is clearly shown that there are exceptional reasons why [Wilson's] detention would not be appropriate."

#### A. Whether Wilson Meets the Conditions of Section 3143(a)(1)

Section 3143(a)(1) states that a judicial officer shall detain a defendant "who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." The Court finds by clear and convincing evidence that Wilson is not likely to flee. The government argues to the contrary, pointing to the fact that Wilson is a Canadian national living in the United States as a lawful permanent resident—meaning there is a "virtual certainty that he will

5

be deported for his crimes"—and that he is facing significant prison terms as a result of his federal and state convictions. (ECF No. 97 at 7.) This makes Wilson, according to the government, a "textbook example of a flight risk." (*Id.*) The Court disagrees. Despite being in jeopardy of imprisonment and deportation for several years at this point, Wilson has not only complied with all of his conditions of release, but has also since traveled outside of the country for business without incident. Moreover, in light of the dismissal the first count of the indictment against Wilson at the bench trial, Wilson now faces a less serious mandatory minimum than when he did while on pretrial release. The Court concludes the risk that Wilson will flee upon release pending sentencing is no higher than it was prior to trial. The Court agrees with Judge Burkhardt's earlier conclusion that Wilson did not pose a flight risk prior to trial, and finds—by clear and convincing evidence—that Wilson does not pose a flight risk pending sentencing.

Next, the Court must consider whether Wilson poses a danger to the safety of another or the community. In arguing that Wilson poses a danger to the community, the government recites the horrific nature of the images and videos Wilson possessed and caused to be created. There can be no question that Wilson's conduct has caused, and will continue to cause, serious damage to numerous individuals. However, while Wilson's prior criminal conduct is relevant to this analysis, the Court must consider whether conditions of release could incapacitate Wilson from engaging in any such behavior again. The Court is convinced, in light of the significant conditions imposed during Wilson's pretrial release and his adherence to such conditions, that if the same conditions were continued during Wilson's pre-sentencing release he will not pose a danger to the safety of another or the community. For example, during Wilson's pretrial release he was not permitted to use any computer without monitoring by the Pretrial Services Office, and he was prohibited from using any other device to connect to the internet. (ECF No. 24.) Wilson was also prohibited from having direct or indirect contact with any minor without the supervision of a person knowledgeable of Wilson's charges, and was placed on GPS monitoring confined to home incarceration. (*Id.*)

Having abided by these (and other) conditions or pretrial release, Wilson has demonstrated by clear and convincing evidence that his release pending sentencing does not pose a danger to others or the community.

**B. Exceptional Reasons for Release**

Wilson offers several reasons why the circumstances of this case present exceptional reasons supporting his release pending sentencing. The strongest of Wilson's argument is that his appeal of this Court's denial of his suppression motion, which is currently pending before the Ninth Circuit, raises a substantial question regarding the scope of the Fourth Amendment. The issue addressed in that ruling is novel—to the Court's knowledge, the Ninth Circuit has never addressed it—and difficult. While it appears that at least two other district court judges have recently issued rulings denying suppression motions under similar facts, *see United States v. Ackerman*, No. 13-10176-EFM, 2017 WL 4890433 (D. Kan. Oct. 30, 2017) (citing this court's ruling); *United States v. Stratton*, 229 F. Supp. 3d 1230 (D. Kan. 2017), there is a meaningful possibility that the Ninth Circuit might disagree. What is more, if the Ninth Circuit reverses this Court's decision on that issue, the Court would likely suppress the evidence obtained from Wilson's email account and residence, as well as evidence obtained from investigations into Jenalyn Arriola. (*See* ECF No. 71 at 20–23 (rejecting the government's alternative arguments).) Wilson's convictions thus likely "will stand or fall" based on the Ninth Circuit's ruling on a substantial Fourth Amendment issue. *See Garcia*, 340 F.3d at 1017 n.4. The Court finds that the substantial nature of Wilson's appeal weighs strongly in finding that this case presents exceptional reasons to release Wilson pending sentencing.

Next, Wilson points to the fact that he is currently defending a criminal prosecution in state court arising from the same conduct at issue in this case. Wilson argues that his incarceration makes it difficult for him to meet privately with his attorney to prepare his defense, particularly when the prosecution is occurring "before a separate sovereign." (ECF No. 95 at 5.) Wilson's difficulty in meeting with counsel carries little

weight towards Wilson's claim that *exceptional* reasons exist for his release. He has not offered evidence suggesting that accommodations cannot be made to ensure that he is able to meet privately with his attorney. Additionally, the Court finds it likely that Wilson will be transferred to state custody at some point to facilitate his appearance at pretrial and trial proceedings, at which point Wilson's situation is the same as all other individuals being criminally prosecuted in state court.

While Wilson's difficulty in preparing for his state trial is not exceptional, his ongoing state proceedings do suggest an exceptional reason for release pending sentencing for a different reason. The Court is aware of, and cannot turn a blind eye to, the very real physical dangers that await individuals convicted of child-involved sex crimes in prison. The Court fears that if Wilson is forced to meet with counsel regarding his state court trial while in the federal detention center, there will be a serious risk that other inmates will become aware of the details of Wilson's crimes. As discussed in *Garcia*, the defendant's vulnerability "to injury in prison" is a relevant consideration in this analysis. 340 F.3d at 1021.

Because of his upcoming state trial, Wilson faces a situation different from the routine (though no less worrisome) risk of violence that sex offenders face while incarcerated. *See United States v. Larue*, 478 F.3d 924, 926 (8th Cir. 2007) (holding that "the offense-related violence that [the defendant] might be subjected to in confinement" was not "clearly out of the ordinary"). Here, forcing Wilson to *prepare* for his state trial while incarcerated will cause a situation in which it is likely that other inmates will learn the details of Wilson's crimes. Thus, while Wilson may face a safety risk in prison under any circumstance, his need to prepare for the state trial while awaiting sentencing in this case creates an "exceptional reason" to fear that detention will lead to physical harm.

The remainder of Wilson's arguments do not hold much weight in support of his argument for release. Wilson argues that there are particular "routine transportation problems when federal detainees have state court proceedings," which will result in either his absence during "critical proceedings," and/or his being "transported through the state

courthouse, in plain view of the jurors, while under guard." (*Id.*) These issues, however, are unexceptional. *Cf. United States v. Mostrom*, 11 F.3d 93, 95 (8th Cir. 1993) ("The 'exceptional reasons' language in section 3145 does not relate to inadequacies in the general means of transportation of prisoners from places of holding court to places of detention."). There is little evidence to suggest that Wilson would not make it to his pretrial proceedings in state court, and the Court finds it unlikely that Wilson would be transported in plain view of the jurors because the new state courthouse will be housing criminal courts by the time of the state court trial.

Next, Wilson argues that, despite his child pornography-related crimes being classified under the Federal Criminal Code as crimes of violence, they are not "truly violent" because they did not involve physical violence. The Court disagrees. Wilson's crimes will likely cause severe and lifelong psychological harm to multiple individuals—the fact that these injuries will not be revealed by an x-ray offers no one any comfort. Society discourages violence because it harms the health of victims and makes community members feel unsafe. Wilson's crimes cause the same outcomes. In this sense, the circumstances of this case are unlike those discussed in *Garcia*, where the court considered a case in which the violence that resulted from the crime was not the *intention* of the defendant. 340 F.3d at 1019.

Wilson also points to the fact that during the months when he was on pretrial release he exhibited "good conduct," and received active therapy. (ECF No. 95 at 6.) While Wilson's compliance with his pretrial release conditions is evidence that he will not pose a risk of danger to other or the community, adherence to conditions of release are the norm and cannot serve as an "exceptional reason" that detention pending sentencing would be inappropriate. *United States v. Mahoney*, 627 F.3d 705, 706 (8th Cir. 2010); *United States v. Little*, 485 F.3d 1210, 1211 (8th Cir. 2007); *United States v. Smith*, 34 F. Supp. 3d 541, 554 (W.D. Penn. 2014). Wilson's attendance at therapy during that time also makes little difference in this analysis because there is no reason to believe he could not seek therapy while incarcerated, and it is very likely he will be

9

required to attend therapy once on supervised release.

Having considered the totality of the circumstances of this case, however, the Court finds that Wilson has clearly shown that there are exceptional reasons at play making Wilson's detention pending sentencing inappropriate: (1) he is currently appealing a substantial question that likely will determine whether his convictions will stand, and (2) his state trial preparations—if done while incarcerated—could put him at serious risk of physical harm from other inmates. These reasons go beyond "[h]ardships that commonly result from imprisonment," and justify Wilson's release pending sentencing. *Garcia*, 340 F.3d at 1022.

## IV. Conclusion

The Court concludes that, for purposes of 18 U.S.C. § 3145(c), Wilson "meets the conditions of release set forth in section 3143(a)(1)," and has "clearly shown that there are exceptional reasons why [his] detention would not be appropriate." Wilson's motion for release pending sentencing is therefore GRANTED. The matter is referred to Magistrate Judge Jill L. Burkhardt for a hearing to determine reasonable conditions of release.

**IT IS SO ORDERED.**

Dated: January 4, 2018

Hon. Gonzalo P. Curiel
United States District Judge